Alright, first up is 25-1324 Futrell-Smith v. Brinker International. Mr. Kottnick, you may proceed. My name is Spencer Kottnick on behalf of our pilot marketer Futrell-Smith. Your Honor, this case arises from Chili's decision to require Ms. Futrell-Smith and her family as the only black customers in a restaurant to prepay for their meal before providing service, based on Chili's disputed claim that a server identified Ms. Futrell-Smith as a black guy. The appeal involves a straightforward procedural error under Helgert and the mishandling of the McDonnell-Douglas burden-shifting framework. The appeal can be broken down into three parts. First, the district court granted summary judgment while the evidentiary and spoliation issues surrounding defendant's hearsay identification remained unresolved. This was contrary to the procedural fairness rules established in Helgert. Second, the district court improperly collapsed the prima facie case and the legitimate reasoned stages of the McDonnell-Douglas burden-shifting framework by accepting defendant's disputed justification. Third, the district court relied on inadmissible hearsay, resolved factual disputes against Futrell-Smith, and effectively imposed a pretext plus standard, which has been rejected by this and the Supreme Court. With respect to the first issue, the grant of summary judgment occurred while the motion for sanctions still remained unresolved. The individual who purportedly identified Ms. Futrell-Smith was a server by the name of Chavez. I thought that the court ruled on the sanctions motion and granted it in part and deferred part of it until trial. Is that wrong? So the district court deferred on any substantive rule on the sanctions. It held that it would assess a potential jury instruction down the road, but it did not address the specific sanctions request as it related to the summary judgment briefings. So because Ms. Chavez was interviewed and the notes were not preserved, which the district court held was spoliation, and because Ms. Chavez did not show up for her properly noticed deposition, Futrell-Smith sought sanctions related to both the summary judgment briefings and ultimately the trial. Did you raise her absence in your response to the motion for summary judgment? Yes, that was raised in the motion for summary judgment, and it was actually well-vetted because we actually saw a state related to the motion for summary judgment briefings, specifically because the motion for sanctions was pending. So it was properly, the district court had plenty of notice, which is exactly what HELGIT is designed to provide. And the idea in HELGIT is that if the district court is on notice that there is a potential spoliation issue or there is an evidentiary issue that needs to be resolved in summary judgment briefings, that must be resolved prior to or during the summary judgment briefings. Am I unequivocal? I thought the district court had resolved it before then and said you're going to get relief at trial. I will comment on it and you can put in evidence that they destroyed documents or they didn't retain documents. Am I wrong? So I guess I'm not entirely understanding. What the district court indicated is that it would reconsider or it would evaluate what the exact substance of a sanction would be down the road, but it did not address the actual sanction. It said it may give a jury instruction down the road. And this was really confirmed at the hearing that we had post-summary judgment where the district court acknowledged that the sanction was merely a potential future sanction. And it acknowledged that we were, it stated that we were unable to get there because of granted summary judgment. And the issue here is that summary judgment needs to address that sanction or the sanction needs to be addressed prior to the order of summary judgment. Now, one of the things that the district court did do with respect to your, with your motion for sanctions was it said it was not going to exclude the evidence, right? Well, it said that it was not going to make a determination of whether or not it would exclude shipouts from testifying at trial. And it pushed off to the later date. It also said that it was not going, it construed our motion for sanctions as essentially a directed verdict. And so it said it was not going to award that. Was your, was your request for sanctions, was the remedy you sought basically to exclude the evidence that the servers told the, the manager or assistant manager about the prior walkout or alleged prior walkout? That was one of the requests at the very least. And it was specifically directed at a motion for summary judgment. And it gets really important because if you go to the second point, which is the McDonnell-Douglas burden-shifting framework and where this error occurred, the district court relied on this hearsay statement to narrow the comparator cross, which was also an error. Because in the context of the McDonnell-Douglas burden-shifting framework, you first have the prima facie case. And that means you identify. We understand that. Are you saying in response to Judge Carson's question that you sought to exclude the assistant manager testifying as to what she told her? Did you, was that one of your requests? That was one of our requests. And that was one of our requests in the motion for sanctions. And it was specifically directed at the motion for summary judgment stage because. And the court had indicated that it was not going to do that. The court indicated that it would consider a sanction down the road as it relates to trial. But not that sanction. It didn't address it. So at that stage, there were, I think, six specific requests that we listed in our motion for sanctions, including sort of a catch-all provision. And the court only addressed the first two of them but did not address any of the specific requests related to the pending summary judgment briefing. And I think going to the McDonald-Douglas burden-shifting framework, this is important because what the court did is it accepted the disputed justification that it was a walkout as a basis for narrowing the comparator cost when really that analysis should be done at the pretext stage. So when you think about the burden-shifting framework. Did you have evidence that the two servers didn't make those statements? Other than an idea that notes were lost and that those notes likely would have given you the evidence you needed? We have evidence of pretext. Hold on. Not the question. Let's be specific. As far as the, did you have evidence that the two servers did not tell the assistant manager that there had been a prior walkout? So, no. But the assistant manager, Caroline, is the only one who can testify to that because the declarants were unavailable. And we do have evidence that the assistant manager, that the servers were not present or serving the tables where there were prior walkouts. We do have ample evidence of pretext. We have evidence that the interview notes that Chavez was required to preserve were not preserved. Well, they preserved part of them, right? As to one person, they preserved? They preserved every single part of the investigation except for the interview notes with Chavez, who is allegedly the person who identified Ms. Futrell-Smith as a walkout. I thought Ms. Walton had also. And tell me what her statement was. And was she deposed prior to summary judgment? So, Ms. Walton, no. The Ms. Chavez deposition was noticed. And then after Ms. Chavez's deposition was noticed, we got evidence from Brinker or Chili's that Ms. Chavez was, in fact, the one who identified Ms. Futrell-Smith. It was essentially a cascading hearsay chain. It went from Chavez allegedly to Walton allegedly. So Chavez is really the critical individual that needed to present testimony here. And in the context of the way the McDonnell-Douglas burden-shifting framework works, it's defendant's burden to establish a nondiscriminatory reason for their justification. And that is a burden of production. And that is different from a trial. A trial, Ms. Futrell-Smith would have the burden to ultimately prove her case and ultimately prove that defendant's true reasons for his actions were discriminatory. But if a defendant is going to seek summary judgment, under even Faulkner, which is the case that the defendants relied on, they have the burden of production. So they have to come forward with admissible evidence for their nondiscriminatory reason. Well, why wasn't, I mean, so they did produce something. They produced, I can't remember the name, keel wine. And she said, Chavez told me that they'd walked out on their check before. Yeah, and so that is not, I mean, not a hearsay. But is it? So they, was that offered for the truth of the matter asserted? Or was it offered to show keel wine's state of mind? So it was offered to show, a defense argument is that it was offered to show keel wine's state of mind. But it was utilized by the district court for the truth of the matter asserted by narrowing the comparator class. Moreover, when you think about how it was accepted by the district court in this context, it was accepted as a legitimate reason for the defense. And the problem here is if you look at Faulkner, which is the principal case cited by the defendants. Let me ask you this. Yeah. If it was undisputed that there had been a prior walkout, would that be appropriate for the, then would the district court be using that as a comparator be appropriate? So if it was undisputed that she was legitimately identified as a prior walkout, then that could conceivably narrow the comparator class. But you have to think about it in the context of similarly situated. So usually that comes up in employment situations, right? And you have, let's say you have 10 white employees and one black employee. And the black employee claims that they were terminated based on their race. And the employer says, no, we terminated this employee because he was the only poor performer. It would make no sense under the whole point of the McDonnell-Douglas burden-shifting framework to say this employee had no similarly situated counterparts because he was the only poor performer. That sort of assumes the truth of the defendant's entire case. And that analysis really comes in a pretext. And so that's exactly the problem we're dealing with here. Because what happened is the district court assumed the truth of the walkout defense and then narrowed the comparator class to only other individuals who were suspected of walking out when that analysis really should come in at the pretext stage. And at the pretext stage, the issue is not can we prove through additional extrinsic evidence that it was racially motivated. The whole point of the burden-shifting framework is that we prove that defendant's stated reason is a jury could determine that it is not legitimate or not believable. And once we have done that, then the question properly goes to the jury, not a judge. And so that's what we have here. Because the judge just conflated the process for which you must go through when you're evaluating the burden-shifting framework by putting it all at the beginning. And that prevented Futrell-Smith from having the opportunity to demonstrate pretexts. Was your theory of the case that Ms. Kilwine acted with racial animus? Or is it that Ms. Chavez acted with racial animus in making a false accusation against the plaintiff? It's that Kilwine acted with a discriminatory animus. And she was deposed and basically stated that Chavez told her. Correct, Your Honor. And there was ample evidence demonstrating her lack of credibility that was presented. She had also had prior complaints from black employees. She didn't follow the policy. She got a serious reprimand. There's just voluminous evidence that undercut her credibility. Were there any other Dynand Dash incidents at this Chili's location? Yes. But the servers involved were not—we got actual data showing that the servers involved who Kilwine claims identified Futrell-Smith as a blackout. None of those servers were assigned to those cities. I was asking if there were blackouts—accusations other than Futrell-Smith. Well, I mean, there were allegations that other people had Dynand Dashed. I mean, that's not really a disputed fact. Okay. All right. Thank you, Counsel. Thank you, Your Honor. Good morning. Melissa Penagakos on behalf of Appellee Brinker International. I'd like to start by addressing the question that was last asked, which was whether there were previous alleged walkouts at the restaurant that Ms. Kilwine did address. And there were. Not too long before the incident with Ms. Futrell-Smith, there was a white male individual who had been identified as someone who had been in the restaurant before and had previously walked out. Ms. Kilwine, at that time, approached her own supervisor and asked what to do in the situation. And her understanding was that her supervisor directed her to ask for proof of form of payment prior to serving the individual. And so that's what she did. With respect to that incident, was there any contrary evidence? About whether or not he was a walkout? No, but as to whether the supervisor approved that method of dealing with it. No, the supervisor admitted to that. Okay. And he was also deposed. I also want to go back before. What was the time frame of the previous incident? I believe it was in a couple-month period, if not sooner. I want to go back to the timing on the motion for sanctions, because that was an issue that the court raised early on in Mr. Kotnick's argument. When Brinker moved for summary judgment, Ms. Futrell-Smith sought an extension for the response. In the time frame between the motion and the response, we had the hearing on the spoliation motion. The spoliation motion was ruled on, as is clear in both the hearing transcript of the actual sanctions motion and in the October 22, 2025 hearing, where appellant was seeking to stay the state court claims. The district court judge, again, reaffirmed that he clearly did make a ruling on the motion for sanctions and that his ruling, based on the evidence presented, was that the appropriate sanction would be at trial. There could be a jury instruction instructing the jury that Brinker should have saved the notes, and they did not. That was the appropriate sanction determined by the district court. And they could infer bad behavior from that?  Whatever inferences came from that instruction, that was the sanction imposed. Wouldn't that have helped plaintiff overcome summary judgment then? I don't believe that it would have, because there was no evidence to that effect. And at trial, there may have been testimony from witnesses that would have led the jury to infer one way or the other. And what the judge was looking at at the district court level in the motion for summary judgment were undisputed facts. The undisputed facts are not inferences. The undisputed facts showed that Ms. Futrell-Smith could not meet her prima facie case of discrimination. Then, in the response to the motion for summary judgment that was filed, with no further delay, after the spoliation hearing, Ms. Futrell-Smith, in a couple footnotes, in three separate footnotes, raised the issue of Ms. Chavez not being deposed and the notes not being preserved, but did not raise any issue regarding a challenge to the ruling on the sanctions motion. And therefore, it is not appealable in a basis for challenging the summary judgment motion, because it was not raised as an issue in the response to summary judgment. And the district court noted that again in this October 22nd hearing, when he said, you did not raise this as an issue, and therefore, I couldn't rule on it. I'm not able to infer and read your mind and impose different sanctions when I had no reason to believe you were challenging the order that came from the spoliation hearing. So you're saying there was a waiver? Correct. What was the context of Chavez not coming to her deposition? That's a good question. So Brinker, early on, had some contact with Ms. Chavez. She's obviously a former team member. When the case first started, when we went to reach out to her to schedule her deposition, we lost contact with her. We sought contacting via email, regular mail, and phone, and could not get a hold of her. Brinker provided her contact information to Ms. Futrell-Smith. They could not get a hold of her. They subpoenaed her for her deposition. She did not appear, and Ms. Futrell-Smith did not move to compel her deposition. And that was also something that the court raised during the sanctions hearing, is that there were further efforts that could have been made to attain that testimony, and they were not made. Does the record show that they affected service on her? Yes. Okay. Well, I can't say that to be true for certain, whether or not she acknowledged service. I want to then go to the issue of the alleged collapsing of the McDonnell-Douglas analysis. In terms of the court's analysis on comparator evidence, the metaphor that appellant raised is a good one. Because we are in the McDonnell-Douglas analysis burden-shifting framework, an analogy to an employment situation applies in terms of how comparators are looked at. Before you make that point, I don't think any of our cases have applied McDonnell-Douglas to this public accommodations section 2000 type plan, have we? When there's indirect evidence of discrimination, the McDonnell-Douglas analysis applies. And I do believe in our brief we do cite to a case that shows the Tenth Circuit relying on that analysis when there is not direct evidence of discrimination. In this same statute, though? Under 1981? Yes. I'd have to go back and look at the citation, but I believe in setting up the analysis and using McDonnell-Douglas, I believe that that's the case. So in that analysis, this court and the Cerro V. Sandia Corp. held that similarly situated individuals are those that are similar in all aspects. In the metaphor previously used, if an employer terminated an employee because of the belief and understanding that they had performance issues, the comparators cannot be all employees. The comparators must be all employees with those same performance issues. If it happens to be that other employees don't have the same performance issues, then they're actually not fair comparators. Or comparable.   Exactly. And the difference there is that if there's evidence of that poor performance, or in this case evidence that Ms. Killine believed that Ms. Futrell-Smith was a former walkout, that's what makes them a comparator. In this sense, as the district court clearly said, valid comparators under these circumstances are not just non-black customers, but non-black customers suspected, I'm not disputing whether or not it's actually true if she was a walkout, but the comparators are other non-black customers suspected of walking out on their bill. Similarly, other comparators in the employment context would be other employees who the decision-maker believed had comparable performance issues. I want to also address the hearsay issue raised. As noted previously, the challenge around Ms. Chavez's... Before you go there.  Was the timing on the perceived dine-and-dash here, white guy, did that occur after this incident? No, prior to.  Which led Ms. Killine to believe that the appropriate action was to confront the guest. Okay. In terms of hearsay... And you say it was because she led to believe that it was the appropriate action, that's because her supervisor told her it was the appropriate action? Correct. Okay. On that note, there's an argument that there was a violation of Brinker's policy as evidence of pretext. Brinker does not have a specific policy regarding how to handle that exact situation. It does obviously have guest experience policies, and Brinker did find that both the supervisor and Ms. Killine violated the guest experience policy in their actions and the supervisor's direction to Ms. Killine regarding their actions. But that does not necessarily show that there was an inconsistent policy applied. On the hearsay issue, under Rule 801, hearsay is a statement offered for the truth of the matter asserted. We don't know what the truth is in terms of Ms. Chavez's understanding of whether or not Ms. Futrell-Smith previously walked out. She was not deposed. We don't have that testimony. What we do have is testimony regarding Ms. Killine's belief, which was the basis for her actions. That belief has nothing to do with race or racial animus and is not based on anything that Ms. Killine would have reason to believe was based on race or racial animus. Further, there are contemporaneous notes from the night of in what Brinker calls in the software is called hot schedules. There are hot schedules notes that document that Ms. Killine took action with regard to Ms. Futrell-Smith after she was informed by Ms. Chavez and Ms. Walton that they identified her as a previous walkout. That confirms her belief at the time of the situation was due to the knowledge or belief that she was a walkout, not any sort of animus or racial bias. While Apelli's position is that we don't even get to pretext in this situation because A, the prima facie case wasn't met, there was no evidence of discrimination to meet the second element of the prima facie case. There are no comparators that were more favorably treated. In fact, the white comparator was treated exactly the same. Did they do discovery on Jilly's more broadly to see if this was an issue?  Yes. Yes. And there was documentation of walkouts being higher in that area. This specific location had a higher rate of walkouts than others, and it was something that had been instructed to Ms. Killine as something to be aware of and to do what they could to prevent. She took the extra step that maybe was not necessarily sanctioned by Brinker, but it was something that they were watching at the time. Did the evidence that the plaintiff may have gotten in discovery from Jilly's indicate that with respect to walkouts that in other stores or other places racial minorities might have been treated differently? No. There was nothing in that regard. Additionally, there's testimony from Ms. Futrell-Smith and that she went to Jilly's frequently. She frequented this Jilly's many times. She previously used to actually work for the restaurant at a different location and never had any issues prior to this incident, which I think is poignant here. As I was saying, we should not even have to get to the second phase of the McDonald's-Douglas burden-shifting analysis, but even though we do, the legitimate non-discriminatory reason here is that Ms. Killine believed that she was to confront those who she understood to be former walkouts, nothing related to race. And that is all Appellee's burden here. Appellant tries to shift the burden to not only show that there is a legitimate non-discriminatory reason, but that it's our burden to show that there's no discrimination. That's not our burden. Appellee's burden is to show that they had a reason, which the court has noted is exceedingly light, this burden at this phase, that they had a reason that had nothing to do with race. And Appellee has done that, as the district court noted. Even if we did get to the pretext level of the McDonald-Douglas analysis, which we should not, there's no evidence of pretext here. Appellant tries to attack Ms. Killine's credibility by saying she testified inconsistently regarding the reasons that she confronted Ms. Futrell-Smith. That is not accurate. The entire deposition testimony prior to and before, all of the documents, the notes, the interview notes, and her disciplinary action from Brinker, note why she approached Ms. Futrell-Smith. And it's because she believed that she was a walkout. Appellant also tries to point to pretext due to a complaint that was raised by a former team member. That complaint actually is hearsay, because Appellant is trying to use it for the truth of the matter in that statement, and should not be admissible evidence. Even if it were to be admitted, the investigation following that complaint found the allegations to be unsubstantiated, and Ms. Killine... This is a complaint by an employee against Killine? Correct. And what was the evidentiary support for that? The evidentiary support for the complaint? Yeah. The team member alleged that Ms. Killine made inappropriate comments to her based on her base. And there was an exhibit in the summary judgment papers? There was an exhibit in the record that is the documentation of that complaint, correct, and the investigation following. That investigation did not substantiate the allegations. Ms. Killine denied the allegations, and the complaint, therefore, does not show any evidence of discrimination. Regardless, it should not be admitted as evidence of pretext, because it is hearsay. I'd like to also just remind the court, back to the motion for sanctions. Hold on.  I mean, that could be sort of similar to your hearsay issue, or the hearsay issue against your evidence, in that maybe the purpose was not to show that she had actually been discriminatory herself, but that somebody said she had been. The appellant used the testimony to show that she was actually discriminatory herself based on this complaint. It was not used to show that someone else had also believed it, but that she actually was. That's how the pretext gets there. Okay. But either way, would it tend to undercut her credibility otherwise? Whether it's for the truth, or whether it was for state of mind? The actual evidence does not, because the investigation was conducted, a thorough investigation was conducted into that. Other witnesses were interviewed, other employees were interviewed, and it was not substantiated. All right. So your time's expired. Thank you. Mr. Kotnick, if you would like two minutes for rebuttal, you may have it. Yeah. Okay, Your Honors. With respect to the first issue that Respondent brought up, it was that there was a similarly situated white male who was suspected of walking out. That is just not supported by the factual record. The white male that they are referring to told Chili's that he was a transient individual. Markeisha Futrell-Smith was identified as a purported walkout based on how she looks. That Chili's was not able to present any information based on how they identified her. Hold on. What's the evidence in the record that she was identified because of her looks? So the only thing that Chili's was able to say. Are you talking about her race, her looks vis-a-vis her race, or some other visual look? Chili's couldn't even answer that question. They couldn't say it was because of her height, because of her hair color, because of her mannerisms, because of how she acted, because of what her order was. They couldn't even say that they identified her because another black person had dined and ditched. They couldn't give a single factual detail supporting how that identification, misidentification was made. That in and of itself is strong evidence of pretext. And as it relates to the deposition of Chavez, she was properly noticed and the subpoena was properly served. She was under an obligation to testify. But critically, the deposition of Chavez and evidence coming from Chavez goes to their burden to provide admissible evidence of a non-discriminatory basis for why she was denied the ability to get a service like her non-black counterparts. And so it's on them to get that evidence. They should have gotten a declaration. They should have preserved the interview notes. They should have deposed her. They could have done any number of things to get that evidence, and they didn't do it. Now they're trying to ship the blame to plaintiff, to claimant, saying that it's your burden to go and get that evidence when really it's theirs. Thank you, counsel. We appreciate your arguments this morning. Counsel is excused, and the case will be submitted.